**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
**JOHN NICHOLAS IANNUZZI**,

                                    Plaintiff,


                 -against-                                    **VERIFIED**
                                                             **COMPLAINT**

                                                             Jury Trial Demanded


**WENZHAO  LU, NANSHAN MEMORIAL**
**MEDICAL INSTITUTE, LLC, LU DAOPEI**
**HOSPITAL,**
                                    Defendants.
-------------------------------------------------------------X

        Plaintiff, JOHN NICHOLAS IANNUZZI, complaining of the Defendants, by

his Attorneys, IANNUZZI and IANNUZZI,  respectfully alleges, upon information

and belief, that, at all times hereinafter mentioned:

***The Parties***

        1.      Plaintiff, JOHN NICHOLAS IANNUZZI, hereinafter IANNUZZI, is a

Resident of the County and State of New York.

        2.      For approximately twenty (20) years, IANNUZZI has maintained a

varied and diverse relationship with each and all of the Defendants, beginning with

an  Attorney-client  relationship,  morphing  thereafter  for  many  years  into  a

partnership/joint venture business relationship that continued for many years until the

very recent past.

3.    Defendant, LU is resident of the State of New Jersey, and the Principal Officer of NANSHAN MEMORIAL MEDICAL INSTITUTE, LLC, (hereinafter NANSHAN) and BEIJING LU DAOPEI HOSPITAL, (hereinafter HOSPITAL).

4.    During the period that Plaintiff and Defendants have been associated and collaborating together, HOSPITAL was able to expand its clinical network beginning with a  stem cell bank at Wuhan Biolake, thereafter adding three private hospitals (located in Beijing, Shanghai, and Hebei), specializing in hematology laboratories, as well as a hematology research institute.

5.    Each and all of the Defendants maintain a principal residence and place of business at 310 Congressional Drive, Morganville, New Jersey.

## UNDERLYING FACTS APPLICABLE TO ALL CAUSES OF ACTION

### *Initial Legal Representation*

6.    In or about 2000, Defendant Lu requested that Plaintiff represent his personal interests in various litigations in which Defendant Lu was named as a Defendant. Inter alia, the matters were:

CHINA XINXING IMPORT AND EXPORT CORP. - against - GREENMAN ASSOCIATES, INC.,   New York County Supreme Court Index # 602351/2002 involving  a forged purchase Agreement allegedly executed by Daniel Lu, who was not named as a party to the action but was not, according to the Officer's thereof, not an agent or shareholder of GREENMAN;

HONGZHOU MONEYED LEATHER GARMENT CO.,LTD., against - Damiel Lu, a/k/a/ William Wu/Weilian Wu/Wenzhao Lu et al, New York Count Supreme Court Index # 604085/02 - for clothing goods delivered but remained unpaid;

Golden H & S  v. Lu , Docket No. DJ-288346-02 ;

 Bentsen v. Daniel Lu, d/b/a/ Designer Doors Direct Docket # DC 11351 - 05;

Lu v. Lu, New York County Index No.  026595/01, a discontinued divorce proceeding;

CHENG et Al  V. Designer Doors, Daniel Lu, et al, New York County Supreme Court,  Index # 600929-2008

U.S.  v Lu, District Court, N.J. - Civil Case #: 11-544   - School loans Indebtedness in the amount of  $ 23, 199.05

7.    In the main, the representation of Defendant Lu in the above said matters was undertaken by Plaintiff without benefit of compensation for professional services either because Defendant professed that at the beginning he was basically penurious and requested compensation be deferred or in latter matters because Plaintiff and Defendant had become by agreement co-joined as venture and business partners.

***Thereafter, Joint Business Ventures***

 8.    On the basis of a subsequent agreement to work together as business partners and joint business venturers, IANNUZZI and LU in those capacities undertook various business ventures, including, but not limited to, inter alia:

Boston Medical Nuerotechnolgies, involving development of a tremor therapy for individuals with Parkinson's Disease;

Matching Box, an entity that would manufacture hydraulically operated tool boxes for high end vehicles and pick-up trucks.

### *Medical Tourism and The Hospital/ Lu Daopei/Nanshan Business Venture*

9.  In addition, in or about the year 2009, IANNUZZI and LU joined together with an individual, Norman Morell, a resident of New Jersey, to establish a medical tourism business to accommodate individuals who might need medical treatment in China that wee unavailable in the United States.

10.  At the time, LU's father was a prominent Medical Doctor in China. In addition, there was an availability and possibility of treating individuals in China with Stem Cell therapy, which therapy was not available or impermissible in the United States at that time.

### *Lu Daopei Hospital Did Not Exist*

11.  It should be noted that at this time, there was no Lu Daopei Hospital in Beijing or anywhere else in the world. Such entity had not yet come into existence.

### *Creating NANSHAN*

12.  In or about December 2009, IANNUZZI and LU together with others, formed and organized as a private company under the laws of Hong Kong called NANSHAN MEMORIAL MEDICAL INSTITUTE (hereinafter NANSHAN).

13.  At that inception, the common stockholders of NANSHAN were Defendant LU, Dr. Doapei Lu, Weiguo Tang, David Jin, and IANNUZZI.

14.    IANNUZZI's participation and ownership of stock in NANSHAN was to be approximately Nine (9%) percent of the issued or outstanding stock.

15.    NANSHAN's total authorized capital consisted of Ten thousand (10,000) shares, divided into Nine thousand (9,000) Common shares and One Thousand (1,000) Special Shares. The Common shares were divided 52% to LU and Daopei Lu and 48% between the other Common shareholders. As aforesaid, IANNUZZI was holder of Nine (9%) percent of the Common Stock.

### *The Agreement*

16.    In or about March 2010, LU suggested to IANNUZZI that inasmuch as they had been working together on various business and entrepreneurial ventures together for a substantial period of time, the arrangement between them should be reduced to writing.

17.    As a result, based on their ongoing working relationship, LU and IANNUZZI, entered into an Partnership Agreement to resolve and memorialize their respective interests in projects, including NANSHAN and each and every subsidiary thereof. The said Agreement provided:

> "KNOW YE BY THESE PRESENTS that on the 9th day of March 2010, WEN ZHAU LU, of 310 Congressional Drive, Moregansville, N.J. 07751 and JOHN NICHOLAS IANNUZZI of 74 Trinity Place, New York, N.Y. 10006, wanting to resolve and memorialize their respective interests in NANSHAN MEMORIAL MEDICAL INSTITUTE, a Hong Kong company

[NANSHAN, and each and every subsidiary thereof, whether organized in the name of NANSHAN or otherwise, whether owned directly or indirectly by NANSHAN, or developed directly or indirectly by NANSHAN, or by WEN ZHAU LU, hereby agree by and between themselves in connection with their mutual interests in NANSHAN, that whatever interest they each have, whether warrants, shares, participation in any and all subsidiary companies, whether wholy owned by NANSHA, or joint ventures, shall be shared between them share and share alike, fifty percent (50%) each, to be held jointly or singly by each of them individually or in the name of a company to be formed by them mutually.

This agreement is biding on each of them, their estates, heirs, family, and otherwise."

### *Defendant LU Acknowledges That He Executed the Agreement*

18.    Parenthetically, in communications subsequently issued by a lawyer on his behalf,  LU has acknowledged that he executed the Agreement and that the Agreement as recited hereinabove was precisely the Agreement that he executed.

### *Blue Horizon and Brian Mehling*

19.    In or about March of 2010, LU and IANNUZZI and the other stockholders of NANSHAN were looking about to increase the footprint of NANSHAN in the medical world.

20.    As a result, discussions were held with other potential prospective investors and/or partners to join or participate with  NANSHAN. Amongst these, Dr. Brian Mehling, John Ferguson,  President and Chief Executive Officer of Blue Horizon International and former CEO of  Hackensak University Medical Center

discussed forming a partnership for medical tourism.

21.    Mehling and an entity known as Blue Horizon Clinic invested more than a Quarter-million Dollars (US)) to form a cord blood bank with NANSHAN in Wuhan, China. This entity was established and became one of, if not the biggest, cord blood banks in China, capable of providing stem cells and stem cell therapy to its donors and others.

### Blue Horizon v. Lu Southern District 11 CIV 3451

22.    In the course of dealing with Mehling and Blue Horizon, disagreements arose as to participation in, expenses of, operation of the said cord blood bank.

23.    Eventually Mehling and Blue Horizon brought suit in the Southern District of New York ( 11 CIV 3451) against Daniel Lu and NANSHAN.

24.    The matter was finally settled, with Mehling, for his investment, being issued stock in an entity formed by NANSHAN called the Wuhan Daopei Stem Cells Biotech Co.

### Iannuzzi Participation as a Partner Not a Lawyer

25.    During this entire latter period of time, although IANNUZZI was a lawyer by Profession, his participation with LU and NANSHAN was as a Partner and joint venturer,  not a lawyer. He did not receive any fees for legal services. Any funds he received, if any, from LU or NANSHAN were by way of partnership participation.

### *Lu Daopei Hospitals Formed*

26.     Subsequently, and over time, NANSHAN undertook to establish hospital entities in China, including but not limited to a large complex of medical facilities, including Yanda Lu Daopei Hospital, Beijing Lu Daopei Hospital, a facility of 27,000 square meters and 300 beds, China's leading hospital specializing in blood disease and tumor disease, and other facilities throughout China, including, but not limited to, Asia's largest hematology laboratory.

### *Hugely Successful*

27.     As an example of the expansion and success of NANSHAN, in July 2020, Lu Daopei Medical Chinese Hematology Group closed an equity financing loan through Demasek in an amount over 500 million yuan ($72 million US) just for working capital.

28.     In addition, NANSHAN, Lu Daopei Hospital, and other subsidiaries, employs several hundred doctors, nurses, technical assistant, and ancillary personnel at its various facilities.

### *Citizenship*

29.     During his partnership/friendship with LU, IANNUZZI had many roles, undertook much effort, many tasks on behalf of LU.

30.     In or about 2009, IANNUZZI assisted LU in obtaining his United States

*__Impediment to Citizenship__*

31.    One of the impediments to LU's road to United States citizenship was his conviction of a Felony of Conspiracy in the Southern District of New York  [Indict. # 92 CR 876-01 (AGS)].

32.    In addition to the Federal charges in the Southern District, LU's record was also blemished by a charge in the State of New jersey, for which he served a period of incarceration. This charge was eventually expunged in the State of New Jersey but had not been so expunged at the time of the applicatioin for citizenship.

33.    IANNUZZI gathered and provided all the documents from the Courts, the Prosecutors,  and the United States Probation Department as required by Immigration Services on LU's behalf.

34.    Moreover, IANNUZZI wrote an informational explanation of the background of LU's  involvement in the charged criminal activity, and the results of the prosecutions which were provided to the Immigration authorities.

35.    As a result of the Application and information provided, LU was granted citizenship in the United States in or about 2009.

*__Other Business Ventures - EB-5 Investors From China and Green Cards__*

36.    In 2013 LU and IANNUZZI explored a project of arranging for Chinese

investors to obtain U.S. permanent residency, or green cards, through investments in U.S. real estate development projects within the guidelines of the EB-5 Immigrant Investor Program.

37.    Toward that end, IANNUZZI in the United States, undertook, together with LU in China, to find projects and investment properties in economically depressed areas of the United States for investment as part of the EB-5 program.

38.    One of the proposed projects was a golf course property in Dutchess County New York to be developed with multiple town houses to be built on the golf course, which project, because it provided many jobs for American workers, fit within the guidelines of the EB-5 program.

39.    Investors did travel to the United States and IANNUZZI hosted the same and introduced them to the various projects available.

40.    Ultimately, while projects were found that were eligible under EB-5 program standards, the investors who initially manifested an interest in making such investments ultimately did not follow up on the opportunities provided.

### *Condominium Purchase at 125 Maiden Lane*

41.    In or about 2013, LU advised IANNUZZI that they, LU and IANNUZZI, together with NANSHAN and other Chinese interests should jointly purchase a condominium in New York as office space for the enterprise..

42.    IANNUZZI, in New York, inspected various locations for purchase and discussed the same with LU.

43.    Ultimately, IANNUZZI located what he considered a suitable property at 125 Maiden Lane, Unit # 16. The plans and prices were discussed between LU and IANNUZZI and were approved by LU who indicated that the funding would be entirely provided by LU, or NANSHAN, or Chinese investors.

44.    A contract of purchase was drawn up between 125 Maiden Lane Equities LLC and DP Capital Investments LLC the entity that had been designated by LU as the purchaser for a purchase price of $3,671,550.00.

45.    Ultimately, the said purchase was never finalized.

### *National Arts Club*

46.    As a hobby, LU paints pictures in his spare time.

47.    As a result of LU's desire to have a showing of his paintings, IANNUZZI arranged to have persons of his acquaintance who were Members of the National Arts Club sponsor  LU to be a Member of that Club in order that a show of his paintings could be arranged.

48.    IANNUZZI drafted LU's Application for the National Arts club. It was accepted, and he was approved after an interview as a Member in 2015.

49.    To date, LU has not completed what he considered a sufficient body of

art work for a one-man showing.

### *Ludini Realty*

50.    In or about 2015, LU advised IANNUZZI that they should jointly purchase a property in Dutchess County, a place where LU could build a summer house.

51.    IANNUZZI looked about for properties and ultimately found a 53 acre site of vacant land which he perceived to fit the description of what LU wished to purchase.

52.    A contact of sale was drafted and the property was purchased for $285,000.00 in the name of Ludini Realty LLC (Dino Ludini being an Americanized/Italianized play of the name Daniel Lu).

53.    According to yet another specific request of LU, an Agreement was drawn up so that the property purchased for Ludine Realty was t be owned jointly by LU and IANNUZZI fifty/fifty, share and share alike, mirroring the Agreement between LU and IANNUZZI in connection with NANSHAN.

54.    LU provided the entire funding for the purchase of LUDINI Realty which was made in or about  November 2017 with the Seller's granting a purchase money mortgage in the amount of approximately $188,000.00 and LU providing approximately $100,000.00.

55.    Thereafter, and to date, LU has provided funds in the amount of and additional $90,000.00 to reduce the outstanding mortgage down to $96,000.00.

56.    The interest on the said outstanding mortgage has been paid by either LU, through IANNUZZI, or by IANNUZZI alone.

### *The Relatinship Was NOT Just Lawyer and Client*

57.    All of the above recited information is submitted to show that the relationship between LU and IANNUZZI was far from the ordinary Lawyer/Client relationship.

58.    This information was input to show that LU and IANNUZZI were joint venturers in many situations, that IANNUZZI, while able to perform many tasks that would have required a lawyer's input, was acting as a joint partner with LU in connection with the transactions and settings.

59.    Thus, when LU insisted that IANNUZZI reduce their relationship to an Agreement, just in the Ludini Realty arrangement, that their respective interests would be open, plain, unequivocal.

60.    Before the specter of very large sums of money became a reality, LU and IANNUZZI were fifty/fifty partners, share and share alike in all the undertakings in which IANNUZZI participated.

61.    Only when very large sums of money came into the picture, see below,

did LU renege in any way the equality of footing and standing between himself and IANNUZZI or in any way or fashion deny their share and share alike contractual arrangement.

## *Sale of the Hospital Complex*

62.    The LU, NANSHAN and DAOPEI consortium - for lack of a better description - is a very valuable business consortium

63.    As afore mentioned, the Lu Daopei Hospital complex or consortium, a subdivision and derivative of NANSHAN arranged for a loan for  working capital alone in the amount of $72,000,000.00 US.

64.    Thus, the interest of LU who owns at least between twenty five (25%) percent and fifty (50%) percent of the total entities, and therefore, IANNUZZI's interest in accordance with the Agreement between LU and IANNUZZI, is very valuable.

65.    Within recent time LU because of political circumstances in China  has expressed a necessity to sell the various praoperties and businesses in China and has undertaken to seek a buyer for the hospital complex,  the entire NANSHAN/DAOPEI entity(ies).

66.    LU has been seeking, according to LU, American hedge funds or

investment banks to purchase the entities or portions thereof.

67.     However, according to LU, a major impediment to the sale is LU's criminal record in the United States, where he was convicted of a Felony in the District Court, Southern District of New York and had a record in New Jersey.

68.     As aforesaid, the New Jersey charges, IANNUZZI was informed have been expunged under New Jersey law.

## *Application for a Certificate of Relief of Civil Disabilities*

69.     As there is no expungement for convictions in the United States Federal system,  as the next best alternative, IANNUZZI made an application in the State of New York for a Certificate of Relief from Civil Disabilities relating to the Federal conviction on behalf of LU.

70.     All the necessary and required papers, including LU's Affidavit, IANNUZZI's Affirmation,  were submitted to the Review Unit of the Department of Correction of the State of New York on or about July 15, 2021.

## *Project New Hope*

71.     Meanwhile, a consortium of American investors, investment banks, hedge funds gathered to consider the purchase, and the purchase price of LU's interests, and those of NANSHAN/DAOPEI.

72.     In addition, LU advised IANNUZZI this consortium were particularly

concerned with LU's criminal record.

73.    LU asked IANNUZZI to respond to Project New Hope's questions and to appear telephonically on a conference call to multiple interests and interested parties to answer questions about his conviction in the Southern District of New York and to qualify and quantify the moral character and moral quality of LU.

74.    Subsequently, in or about mid-August 2012, IANNUZZI did so telephonically participate in what was headed Project Hope, was telephonically interrogated by multiple individuals, answered questions posed, and provided whatever information was requested.

75.    After the said telephonic interview, LU advised IANNUZZI that any day an answer should be received as to whether the interested investors were mollified as to his criminal past.

76.    In mid-August 2021, LU advised IANNUZZI that he believed that the answer would be ultimate approval of him, the deal, and the sale of the NANSHAN/DAOPEI entities at any moment.

77.    Although trying many, many times, by phone, text, email, and snail mail, IANNUZZI has not been able to contact, nor has he heard a word from LU since the apparent approval of the sale of the China properties was received.

_**Jurisdiction and Venue**_

78.     This Court has diversity jurisdiction over this proceeding as Plaintiff's principal place of business is located at 233 Broadway, Suite 2204, County and State of New York.

79.     Defendant, LU is resident of the State of New Jersey, and the Principal Officer of Defendant NANSHAN MEMORIAL MEDICAL INSTITUTE, LLC, and Defendant BEIJING LU DAOPEI HOSPITAL, all of which Defendants maintain a principal residence and place of business at 310 Congressional Drive, Morganville, New Jersey.

80.     The amount in controversy pursuant to a business agreement between the parties, and the assets derived thereof exceed many millions of dollars.

81.     Venue is proper in this district pursuant to U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in substantial part in this district.


**AS AND FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract)**


82.     Plaintiff repeats and realleges each and every allegation contained in ¶¶ 1-81 of this Complaint, or elsewhere in this Complaint if relevant hereto, with the

same force and effect as if fully set forth and repeated hereat.

83.    Upon information and belief, the LU/IANNUZZI Agreement (hereinafter AGREEMENT) required LU to share and share alike with IANNUZZI, to equally share his interests including but not limited to those derived from NANSHAN and DAOPEI, or otherwise, thereafter, and, to perform his obligations in connection with said AGREEMENT in a good faith manner and with the punctilious attention that an ordinarily prudent fiduciary in such position would employ.

84.    Upon information and belief, the AGREEMENT required each of them to perform his duties in a good faith manner and with a degree of care and the punctilious attention which an ordinarily prudent fiduciary in such position would employ.

85.    By the acts of omission and commission set forth herein or as to be proven at trial, Defendant LU knowingly, willfully and maliciously failed, breached, and violated AGREEMENT and any other relevant understanding and working relationship between IANNUZZI and LU, failed to perform the same and/or thereby breached his various duties and otherwise breached the AGREEMENT.

86.    By reason of all the foregoing, and other facts set forth herein or to be proven at trial, IANNUZZI has been harmed and damaged, and is entitled to recover

from Defendants, each or some of them, an amount to be determined at trial, which amount is as yet not ascertained or ascertainable, but believed to be no less than many millions of dollars.

87.    As Plaintiff has been wrongfully deprived of the value of his interests as set forth in the AGREEMENT, IANNUZZI is entitled to restoration of his interests and to compensatory damages, including but not limited to:

> A. Loss of all past and future benefits of ownership as set forth in the AGREEMENT;
>
> B. Loss of all past and future benefits of ownership, interest and/or investments as set forth in the AGREEMENT;
>
> C. Loss of all future benefits of future ownership in future Projects entered into by the DEFENDANTS as set forth in the AGREEMENT;
>
> D. All other compensatory losses and damages;
>
> E. Pre and post judgment interest on all losses;
>
> F. Reasonable attorneys, experts and other fees; and
>
> G. Costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

88.    Plaintiff repeats and realleges each and every allegation contained in ¶¶ 1-87 of this Complaint, or elsewhere in this Complaint if relevant hereto, with the same force and effect as if fully set forth and repeated hereat.

89.    The AGREEMENT contained explicit and implied covenants of good faith and fair dealing requiring each party to respect and not injure the right of the other party to receive the benefits of the AGREEMENT, requiring the parties to act in good faith and to deal fairly with each other, impliedly prohibiting either party from doing any act which would have the effect of destroying or injuring the right of the other party to receive the benefits of the AGREEMENT, and an explicit and implied obligation to exercise good faith in all their acts and/or exercise of the rights and obligations under the AGREEMENT and in reaching any decisions under the AGREEMENT .

90.    At all times herein mentioned, Plaintiff acted in good faith and has dealt fairly and honestly with Defendants, particularly LU.

91.    LU and Defendants, directly or indirectly, by aiding, abetting, each other, with knowledge, consent, and/or negligence, have breached the explicit and implied covenants of good faith and fair dealing by the breaches, conduct, and acts of commission and omission as set forth herein or to be proven at trial.

92.    By reason of all of the foregoing, and other facts set forth herein or to be proven at trial, Plaintiff has suffered and sustained, and continues to suffer and sustain, financial and other damages, and is entitled to compensation and recovery therefor from Defendants, all as set forth hereinaabove and in the ad damnum clause

hereof.


## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty)

93.    Plaintiff repeats and realleges each and every allegation contained in ¶¶ 1-92 this Complaint, or elsewhere in this Complaint if relevant hereto, with the same force and effect as if fully set forth and repeated hereat.

94.    Defendants, particularly LU, were fiduciaries of the Plaintiff by virtue of the AGREEMENT and as a result of the special relationship and representations between the parties.

95.    By their conduct, acts and relationships, Defendants, particularly LU, assumed and undertook towards Plaintiff a strict fiduciary duty, including the duty to act in good faith and in Plaintiffs' best interests and to refrain from conduct or omissions which carried with it the foreseeable and unreasonable harm to Plaintiff.

96.    Plaintiff did repose his trust and confidence in Defendants, particularly LU.

97.    The Defendants, especially Defendant LU, has undertaken to engage in a scheme to defraud IANNUZZI by way of total silence, ignoring IANNUZZI's inquiries for information, by giving false and misleading statements and omissions

and breach of fiduciary duties to disclose, regarding the true nature, status, marketability, desirability and worth of the various Defendant Entities and LU's share thereof, the interest by third parties in the purchase of the Defendant Entities, the prospects for and terms of sale or partial sale of the Defendant Entities, and the capital and other requirements of the Defendant Entities.

98.    Defendants, especially Defendant LU, undertook this course of ignoring IANNUZZI's interests, made misleading statements, failed to respond to inquiries for information with the intent to deprive IANNUZZI of his fair share of a sale or partial sale of the Defendant Entities, thereby breaching various fiduciary duties.

99.    LU breached his respective fiduciary duties by the various acts and/or omissions set forth herein and/or to be proven at trial.

100.    IANNUZZI reasonably relied on Defendants, especially Defendant LU's misstatements and omissions (with lack of knowledge of failure to disclose), and that reasonable reliance, factually and proximately harmed the Plaintiff by depriving Plaintiff of his fair share of the AGREEMENT, his fair share in the sale or proposed sale or partial sale of the Defendant Entities.

101.    The actions and inactions of LU were violations of the fiduciary and other duties owed to Plaintiff and were unconscionable and inequitable, and/or were taken with a reckless disregard of the consequences and damages such actions or

inactions would cause IANNUZZI entitling Plaintiff to recover, in addition to real, actual and compensatory damages, punitive damages by reason of the nature of the fiduciary and special relationship between the parties.

102.    By reason of all of the foregoing and other facts set forth herein or to be proven at trial, Plaintiff has suffered and sustained, and continues to suffer and sustain, financial and other damages, and is entitled to compensation and recovery therefor from Defendants, all as set forth in the ad damnun clause hereof.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Fraud and Constructive Fraud)

103.    Plaintiff repeats and realleges each and every allegation contained in ¶¶1-102 of this Complaint, or elsewhere in this Complaint if relevant hereto, with the same force and effect as if fully set forth and repeated hereat.

104.    The Defendants, especially Defendant LU, engaged in a scheme to defraud Plaintiff which involved a series of false and misleading statements and/or omissions regarding the true nature, status, marketability, desirability and worth of the Defendant Entities, the interest by third parties in the purchase of those Entities, the prospects for and terms of  sale or refinancing of those Entities, and the capital and other requirements of the Entities.

105.    Various representations including those set forth above were made to

Plaintiff by Defendants, especially Defendant LU, at various times especially since late (July/August/September) 2021.

106.    Defendants, especially Defendant LU, made those false, fraudulent, misleading statements and/or omissions knowing they were false and misleading with the intent to deprive Plaintiff of his fair share of interest in the Defendant Entities. Plaintiff had no knowledge or reason to know of the undisclosed and converted third party interest in the Entities.

107.    The Plaintiff reasonably relied on Defendants' statements and/or omissions (with lack of knowledge of failure to disclose), and that reasonable reliance factually and proximately harmed Plaintiff.

108.    By reason of all of the foregoing, and other facts set forth herein or to be proven at trial, Plaintiff has suffered and sustained, and continues to suffer and sustain, financial and other damages, and is entitled to compensation and recovery therefor from Defendants, all as set forth in the ad damnum clause hereof, as otherwise set forth herein or to be proven at trial.


## AS AND FOR A FIFTH CAUSE OF ACTION
### (Constructive Trust and Accounting)

109.    Plaintiff repeats and realleges each and every allegation contained in

¶¶1 -108 of this Complaint, or elsewhere in this Complaint if relevant hereto, with the same force and effect as if fully set forth and repeated hereat.

110.   LU was a fiduciary of the Plaintiff by virtue of his  participation in the AGREEMENT, and LU's position as the partner and joint venturer with Plaintiff.

111.   The Defendants, especially Defendant LU, engaged in a scheme to defraud Plaintiff which involved a series of false and misleading statements and/or omissions regarding the true nature, status, marketability, desirability and worth of the Entities, the interest (or contracts) by third parties in the purchase of the Projects and/or Entities, the prospects for and terms of sale.

112.   Defendant LU made those misleading statements and/or omissions knowing that they were false and with the intent to deprive Plaintiff in his fair share of the sale of the entities.

113.   Defendants, especially Defendant LU has, to date, failed and, refused to reveal to Plaintiff information concerning the sale or proposed sale of the Entities and, has failed and refused IANNUZZI the right to inspect the books and records of the aforementioned Entities, and the Entities' opportunities.

114.   Defendants, particularly Defendant LU, have acted  arbitrarily and vexatiously in refusing to allow Plaintiff information or the right to inspect the books and records of the Entities.

115.    Plaintiff reasonably relied on Defendant LU's misstatements and/or omissions (with lack of knowledge of failure to disclose), and that reasonable reliance factually and proximately harmed Plaintiff.

116.    By reason of the foregoing to the extent Defendant LU has exercised any rights or secured any benefits based on his false statements and/or omissions, Defendant LU holds such benefits and interests pursuant to a constructive trust, for the benefit of, and subject to the rights, entitlements, and interests of Plaintiff,  and Plaintiff is entitled to a full disclosure and accounting of all transactions and processes regarding the sale or proposed sale of the Defendant Entities and for receipt of their portion of all proceeds thereof.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Declaratory Judgment)

117.    Plaintiff repeats  and realleges each and every allegation contained in ¶¶ 1-116 of this Complaint, or elsewhere in this Complaint if relevant hereto, with the same force and effect as if fully set forth and repeated hereat.

118.    From 2010, and continuing, Plaintiff was an equal business partner with LU as recited in the AGREEMENT.

119.    Since in or about August 2021, IANNUZZI has requested financial

information from LU and/or access to all of the books and records of LU and the Entities that he is entitled to review in order to know his financial interests.

120.    Defendants, during the relevant time, in bad faith and in breach of their duty to Plaintiff, refused to permit Plaintiff information and/or to inspect the books and records.

121.    Plaintiff, as a party to the AGREEMENT, is entitled to a judgment or order declaring that the Defendants must permit him to inspect those records which a member to the AGREEMENT is entitled to information as to LU's holdings and assets as well as those of the Entities and/or to inspect the books and records thereof.

122.    Plaintiff has no adequate remedy at law.

123.    In the alternative, Plaintiff is entitled to an equitable remedy (equitable accounting), to wit an Injunction, enjoining the sale of any of the hospitals up tp and until he has access to LU's and the other Defendant's financial records.

## AS AND FOR AN SEVENTH  CAUSE OF ACTION
### (Interference with, or Conversion of, Corporate/Business Opportunity)

124.    Plaintiff repeats and realleges each and every allegation contained in ¶¶1 -123 of this Complaint, or elsewhere in this Complaint if relevant hereto, with the same force and effect as if fully set forth and repeated hereat.

125.    Upon information and belief and unbeknownst to Plaintiff, Defendant LU

became aware of the benefits to be derived by him through the transactions (namely the sale by Defendant LU of all or some of the Entities) as a result of, and/or in, his fiduciary capacity as on-site partner of IANNUZZI, and/or the various Entities, as an officer or member of the Entities.

126.    As such, all such opportunities, information and knowledge belonged to IANNUZZI as well as LU and the Entities, and all of their members.

127.    By the various acts and omissions set forth herein and/or to be proven at trial, and by converting such opportunities to his own benefit and to the exclusion of IANNUZZI, Defendant LU breached not only his fiduciary and other obligations, but likewise tortuously interfered with and/or converted opportunities and benefits to his own personal benefit.

128.    By reason of all of the foregoing, and other facts set forth herein or to be proven at trial, Plaintiff has suffered and sustained, and continue to suffer and sustain, financial and other damages, and are entitled to compensation and recovery therefor from Defendants.

**WHEREFORE,** Plaintiff demands judgment against the Defendants and each

of them as follows:

A.     On the First, Second, Third, Fourth, Sixth and Seventh causes of action for actual, compensatory and special damages, including prejudgment interest, all to be proven at trial, which damages are not as yet ascertained and/or ascertainable, but are believed to be no less than several million dollars.

B.     On the Fifth cause of action, a declaration of trust and a full accounting and payment to Plaintiff of their entitlement from any simultaneous or subsequent transactions(s);

C.     On all of the Causes of Action for exemplary and/or punitive damages as proven and to be awarded at trial;

D.     All other damages, costs, fees, or recovery Plaintiff, would be entitled to based upon the proof of trial;

E.     All reasonable attorneys fees, costs and disbursements of this action as permitted by contract, statute or otherwise;

F.     For such other and further relief as this Court may deem just and proper.


**IANNUZZI and IANNUZZI, ESQS.**

Shakira A. Fantauzzi, Esq.
233 Broadway, Suite 2204
New York, N.Y. 10279
(212) 227 - 9595

City of New York
February 2, 2022

## ATTORNEY VERIFICATION

**JOHN NICHOLAS IANNUZZI, J.D.**, an Attorney admitted to Practice Law before all the Courts of the State of New York, and elsewhere,  Affirms and Says, under penalties of perjury that he is the Plaintiff in the instant action and that he has read the attached Complaint and that the facts contained therein are true to his own knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters he believes it to be true.

JOHN NICHOLAS IANNUZZI, J.D.

City of New York
February 2, 2022