USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/21/23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN NICHOLAS IANNUZZI,

        Plaintiff,

-against-

WENZHAO LU,

        Defendant.

22-CV-911 (JGK) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

    The Court has received and reviewed plaintiff's letter-application dated February 10, 2023, seeking an order compelling defendant to produce additional documents (Pl. Ltr.) (Dkt. 64), and defendant's responding letter-brief dated February 13, 2023 (Def. Ltr.) (Dkt. 65). No reply letter was filed. The application is GRANTED IN PART and DENIED IN PART as follows:

    To the extent he has not already done so, defendant Wenzhou Lu (sometimes rendered Wen Zhau Lu), also known as Daniel Lu, shall produce all non-privileged documents in his possession, custody, or control, dated or created on or after March 9, 2010, that are responsive to Plaintiff's First Request for Production of Documents, Requests **B**, **D**, **E**, **M**, and **N**. Defendant need not produce documents in response to Requests **C**, **F**, **G**, **H**, **I**, **Q**, or **R**.

    The responsive documents shall be produced no later than **March 21, 2023**. Fact discovery otherwise closes on March 3, 2023. *See* Rev. Case Management Order (Dkt. 54) ¶ 4. The parties' summary judgment motions remain due 30 days after the close of fact discovery, *see id.* ¶ 8, that is, 30 days after March 21, 2023.

    Requests B, D, E, M, and N seek documents concerning the ownership, valuation, and/or potential sale of Nanshan Memorial Medical Institute (Nanshan) and/or Lu Daopei Hospital. Pl. Ltr. at ECF pp. 5-8. On March 9, 2010, the parties signed a one-page Agreement (Def. Ltr. Ex. 1) which by its terms requires them to "share and share alike," on a 50-50 basis, any interest held by

either of them in Nanshan, "and each and every subsidiary thereof, whether organized in the name of NANSHAN, or developed directly or indirectly, by NANSHAN or by [defendant]." According to plaintiff, defendant is the President of Lu Daopei Hospital in China, which was formed "[s]ubsequently" to the Agreement and is one of Nanshan's "subsidiaries" or a "subdivision." Am. Compl. (Dkt. 22) ¶¶ 3, 26-28, 63. Plaintiff further alleges that defendant "owns at least between 25% and 50%" of what he vaguely describes as "the total entities," *id*. ¶ 64, apparently referring to Nanshan, Lu Daopei Hospital, and other affiliated entities, and that these entities may have been sold in 2021 to "a consortium of American investors, investment banks, [and] hedge funds." *Id*. ¶¶ 71, 76-77. In this action, which includes both contract and tort claims, plaintiff seeks to recover "his fair share of interest in the Entity NANSHAN and it's subsidiaries." *Id*. ¶ 106 (punctuation as in the original). Thus, the documents sought are relevant to plaintiff's claims. Moreover, the discovery at issue does not appear to be disproportional to the needs of the case. *See* Am. Compl. ¶¶ 62-63 (alleging that Lu Daopei Hospital and its affiliates are "very valuable" and that Lu Daopei Hospital recently arranged a $72 million working capital loan). I therefore conclude that the documents sought in Requests B, D, E, M, and N, as limited by this Order, are discoverable pursuant to Fed. R. Civ. P. 26(b)(2).

Defendant states that he has already produced documents concerning Nanshan, and that he should not be required to produce documents concerning Lu Daopei Hospital because, contrary to plaintiff's allegations, the hospital was "formed by Defendant's father Lu Daopei in 2001, long before Nanshan came into existence," and thus is not a "subsidiary" of Nanshan within the scope of the Agreement. Def. Ltr. at 2. Defendant further argues that the Agreement itself is unenforceable, because (a) at the time it was signed plaintiff was defendant's attorney, and was therefore ethically prohibited from entering into a business transaction with his client by Rule

2

1.8(a) of the New York Rules of Professional Conduct (RPC), *id*. at 1-2[1]; and (b) "[a]ccording to Defendant's recent deposition testimony," the Agreement was signed in a "darkly-lit bar" while the parties were intoxicated "after drinking for the better part of two hours." *Id*. at 1.[2]

None of these challenges is a reason to deny plaintiff discovery concerning the ownership, valuation, and/or potential sale of Lu Daopei Hospital. To the contrary: the question whether the hospital is or is not a "subsidiary" of Nanshan (as that term is used in the Agreement) is squarely in issue in this action and is therefore an appropriate subject of discovery. The Court cannot deny such discovery on the basis of defendant's (thus far) unproven denials of plaintiff's allegations. Similarly, while the Agreement may well prove to be unenforceable,[3] neither party has presented

---

[1] RPC 1.8(a) provides: "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless: (1) the transaction is fair and reasonable to the client and the terms of the transaction are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client; (2) the client is advised in writing of the desirability of seeking, and is given a reasonable opportunity to seek, the advice of independent legal counsel on the transaction; and (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction." Defendant contends that none of these three conditions was met, and has counterclaimed for a declaration that the Agreement is "void and unenforceable and a nullity." *See* Ans. to Amend. Compl. (Dkt. 38) ¶¶ 130, 141, 144, 170-82. Plaintiff contends that he was not defendant's attorney when the parties signed the Agreement (although he acknowledges that he performed legal work for defendant both before and after that date, including as recently as 2021). *See* Am. Compl. ¶¶ 2, 25, 29-35, 57-61, 69-70.

[2] The Agreement is notarized. It is not clear from defendant's letter (which describes but does not attach his deposition testimony) whether the notary was also in the darkly-lit bar, and, if so, whether he too was intoxicated.

[3] *See*, *e.g.*, *Held & Hines LLP v. Hussain*, 2018 WL 4233809, at *6 (S.D.N.Y. July 31, 2018), *report and recommendation adopted,* 2018 WL 4232912 (S.D.N.Y. Sept. 5, 2018) (dismissing breach of contact claim by attorney against former client, *sua sponte*, because the contract was entered into in violation of RPC 1.8(a)); *Sotiriou v. Billis*, 11 A.D.3d 672, 673, 782 N.Y.S.2d 917, 918 (2d Dep't 2004) (attorney's violation of predecessor to RPC 1.8(a) "precludes [him] from availing himself of the equitable remedy of foreclosure to enforce the contract" with his former client); *Schlanger v. Flaton*, 218 A.D.2d 597, 631 N.Y.S.2d 293 (1st Dep't 1995) (directing trial court to cancel attorney's stock and shareholder interest in his client's corporations and remove him

the Court with a merits motion on that point (or, for that matter, any admissible evidence going to the actual circumstances under which the Agreement was signed). Consequently, the Court must decline defendant's invitation to put the cart before the horse; that is, to deny discovery by prejudging the outcome of his declaratory judgment counterclaim.

The remaining RFPs now in dispute, however, do not fall within the scope of Rule 26(b)(2). RFP C, for example, requests document concerning an entity identified as Avalon Globocare Corp. (Avalon) which is not mentioned anywhere in the pleadings. The unsupported assertion of plaintiff's counsel that a non-party, David Jin, was the CEO of Avalon and "also a partner and shareholder with NANSHAN," Pl. Ltr. at 3, is an insufficient foundation for the discovery sought. RFP F, which seeks "all" bank statements since January 2021 for accounts in the name of defendant and three members of his family (Grace Lu, Tiffany Lu, and Tyler Lu), is wildly overbroad, even as to defendant himself, and unjustifiably intrusive into the personal finances of his non-party family members. *See* Pl. Ltr. at ECF p. 6. Further, the explanation offered in plaintiff's letter-application (that plaintiff "seeks to confirm whether Defendant . . . transferred assets," *id*. at 4) reveals this RFP to be an unsupported fishing expedition. RFP G, which asks for the Lu family's brokerage account records, is even less justifiable, as it contains no date limitation. *See* Pl. Ltr. at ECF pp. 2-3.

RFPs H and I, which ask for the 2017-2022 income tax returns filed by defendant and Grace Lu, *see* Pl. Ltr. at ECF p. 7, fails for the additional reason that tax returns, while not privileged, are rarely an appropriate target of discovery, because of "the private nature of the sensitive information contained therein and the public interest in encouraging the filing by

---

as an officer and director of those entities because attorney obtained his ownership interests in violation of the predecessor to RPC 1.8(a)).

taxpayers of complete and accurate returns." *Uto v. Job Site Services Inc.*, 269 F.R.D. 209, 212 (E.D.N.Y. 2010). Thus, relevance alone is generally an insufficient basis for a court to compel discovery of tax returns. The requesting party must also show "that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 11 (S.D.N.Y. 2015) (quoting *Securities and Exchange Comm'n v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985)); *see also Shih v. Petal Card, Inc.*, 2021 WL 5279395, at *6 n.8 (S.D.N.Y. Nov. 12, 2021) (denying discovery of tax returns where "[n]o such showing" was made). Here, as in *Shih*, plaintiff has made no showing that he has a "compelling need" for the tax returns sought.

RFP Q is not an RFP at all. It appears to be an interrogatory, requiring defendant to list the names of the "companies, entities, individuals, organizations, or other potential purchasers making offers of purchase of Lu Daopei Hospital Complex . . . within during [sic] the years 2017, 2018, 2019, 2020, 2021, 2022." *See* Pl. Ltr. at ECF pp. 8-9. That information may well be found in the documents responsive to RFPs E and M (seeking, among other things, documents the purchase and/or sale of Lu Daopei Hospital and/or any sale of Lu Daopei Hospital), but RFP Q is not a valid request as drafted. Finally, RFP R is unintelligible. It requests: "Any minutes, memoranda, brochures, offer sheets/documents of the Meeting conducted into the background and qualifications of Daniel Lu in anticipation of potential purchase of LuDaopei Hospital complex that were conducted during the years 201, 2018, 2019, 2020, 2021, 2022." Pl. Ltr. at ECF p. 9 (grammar and punctuation as in the original). To the extent RFP R seeks documents concerning the "potential purchase" of the hospital, it is duplicative of RFPs E and M. To the extent it seeks documents concerning defendant's "background and qualifications," the relevance of the request is unclear. Moreover, the pleadings reference only one conference call, in "mid-August 2022," to

5

discuss defendant's "moral character and moral quality" with potential investors. Am. Compl. ¶¶ 73-74. Plaintiff – not defendant – allegedly conducted that conference call. *Id*. ¶ 74.

This Order disposes of the motion at Dkt. 64. The Clerk of Court is additionally directed to close the motion at Dkt. 57, which was resolved by my Order at Dkt. 59, and the motion at Dkt. 50, which was resolved by my Order at Dkt. 56.

Dated: New York, New York
February 21, 2023

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**