UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN NICHOLAS IANNUZZI,<br><br>                           Plaintiff,<br>   -against-<br><br>WENZHAO LU,<br><br>                           Defendant. | Civil Action No. 22-cv-0911 |

### STIPULATION OF SETTLEMENT

**WHEREAS,** on February 2, 2022, Plaintiff JOHN NICHOLAS IANNUZZI ("Plaintiff") commenced this instant lawsuit against Defendant WENZHAO ("DANIEL") LU ("Defendant") and against Nanshan Memorial Medical Institute and Lu Daopei Hospital alleging claims for breach of contract; breach of implied covenant of good faith and fair dealing; breach of fiduciary duty; fraud and constructive fraud; constructive trust and accounting; declaratory judgment; and interference with business opportunity. (ECF 4). In his Complaint, Plaintiff sought to enforce the terms of a certain written agreement entered into between himself and Defendant on or about March 9, 2010 (hereinafter, the "March 2010 Agreement).

**WHEREAS, o**n February 28, 2022, Defendant, along with Nanshan Medical Institute and Lu Daopei Hospital, served their joint Answer to Plaintiff's Complaint and therein Defendant asserted numerous counterclaims against Plaintiff (ECF 8), including a claim for declaratory relief seeking the Court's judgment that the March 2010 Agreement violated Rule 1.8(a) of New York's Code of Professional Responsibility and therefore it was a nullity;

1

WHEREAS, on March 30, 2022, Plaintiff served his answer to Defendants counterclaims (ECF 11) but on April 11, 2022, Defendant, along with Nanshan Memorial Medical Institute and Lu Daopei Hospital, served their Amended Answer to the Complaint which included the same counterclaims Defendant asserted in his original Answer (ECF 14).

WHEREAS, on May 4, 2022, with leave of the Court, Defendant amended his Complaint to effectively drop Nanshan Memorial Medical Institute and Lu Daopei Hospital from this litigation (ECF 22);

WHEREAS, on July 1, 2022, Defendant moved for dismissal of Plaintiff's fourth cause of action for fraud pursuant to FRCP Rules 12(b)(6)and 9(b) (ECF 32);

WHEREAS, on July 8, 2022, Plaintiff voluntarily agreed to withdraw his cause of action for fraud (ECF) and on July 11, 2022, the Court so-ordered this dismissal (ECF 37);

WHEREAS, on July 13, 2022, Defendant answered Plaintiff's Amended Complaint and once again reasserted the same counterclaims as he asserted in his previous responsive pleading. (ECF 38). Plaintiff filed his answer to Defendant's counterclaims on August 10, 2022 (ECF 41).

WHEREAS, following more than a year of litigation, the parties have determined that it is in their respective best interests to end this litigation by agreeing to the terms contained herein, which includes their agreement to voluntarily dismiss all of their respective claims asserted by each of them against the other in this litigation;

NOW, therefore, it is hereby stipulated and agreed, by and among the undersigned counsel for the parties in this case as follows:

1. As part of this Stipulation of Settlement, counsel for the respective parties shall execute the Stipulation of Voluntary Dismissal With Prejudice Pursuant to FRCP Rule 41(a)(1)(A)(ii) in the form annexed herein as Exhibit "A." Counsel for Defendant shall file with

the Court the fully executed Stipulation of Voluntary Dismissal simultaneous to the filing of this Stipulation of Settlement, which the parties agree shall be filed with the Court within three (3) business days of its full execution.

2. This Stipulation is made for the convenience of the Parties. Nothing herein should be deemed an admission by Defendant to any of the allegations contained in Plaintiff's Complaint, as amended, nor shall anything contained herein be deemed an admission by Plaintiff to any of the counterclaims asserted against him by Defendant, as amended.

3. This Stipulation is intended to resolve all disputes, claims or causes of action which were brought between or among the Parties, or which could have been brought by one party against the other, including claims relating to the purchase and sale of real property in Dutchess County, New York as is more specifically described in ¶¶6-7 of this Stipulation.

4. One of the disputes the parties wish to resolve herein centers around the purchase and subsequent sale of real property located in Dutchess County, New York which Plaintiff asserts he had the right to acquire on behalf of himself and Defendant pursuant to a written agreement between the parties dated May 20, 2016, a copy of which is annexed herein as Exhibit "B," hereinafter, the "Real Property Agreement."

5. The parties acknowledge that on or about May 20, 2016, they entered into this written agreement pursuant to which they contemplated acquiring and jointly owning real property to be purchased by them in the name of a corporation or partnership to be formed for such a purpose. Notwithstanding his acknowledgement of this agreement, Defendant denies ever authorizing or approving the actual purchase of any real property by Plaintiff.

6. What the parties do not dispute is that on or about October 2017, Plaintiff caused the formation of a company called Ludini Realty Ltd. ("Ludini") which Plaintiff maintains was

jointly and equally owned by Defendant and himself. Thereafter, Plaintiff acquired real property located in Dutchess County, New York in Ludini's name (the "Ludini Property") at a purchase price of $285,000. Plaintiff utilized monies sent to him from China by Defendant to acquire the Ludini property. Other than providing the funding for this Property, Defendant played no other role in the acquisition (or subsequent sale) of this Property.

7. What is also not in dispute is the fact that in or about May 2022, Plaintiff caused the sale of the Ludini Property to a third party at a loss, selling the Property for $215,000.

8. In his counterclaim, Defendant alleged that the money he had sent to Plaintiff over the years, a sum totaling over $400,000, constituted loans which Plaintiff agreed to repay to Defendant in time. Plaintiff rejected that contention and claims instead that the money Defendant sent to Plaintiff was to fund the acquisition and carrying expenses of the Ludini Property.[1]

9. Based upon Plaintiff's claim that Defendant was a one-half beneficial owner of the Ludini Property and he was therefore entitled to 50% of the net proceeds derived from its sale, following the sale of the Ludini Property, Plaintiff sent to Defendant a closing statement summarizing the terms of this sale, along with three checks, all made payable to Defendant, totaling $40,832.72, which Plaintiff represented was Defendant's share of the net proceeds from the sale of the Ludini Property. A copy of the closing statement and the three checks are annexed herein as Exbibit "C."

10. Two of the checks made payable and sent to Defendant were bank checks, likely drawn on the purchaser's account; one for $32,582.72; the other for $750. The third check, also made payable to Defendant, was for $7,500 and was drawn on the account of Plaintiff's law firm.

---

[1] Plaintiff acknowledges that he provided none of the funds toward the acquisition of the Ludini Property but that his 50% contribution to its acquisition came in the form of "sweat equity;" the time he contributed toward the formation of Ludini, and his finding, acquiring, maintaining and eventually selling this Property.

11. Based upon Defendant's assertion that he did not have any beneficial interest in the Ludini Property but was instead owed all of the money he claims to have loaned Plaintiff – a sum exceeding $400,000 - upon his receipt of the above-referenced checks (Exhibit "C"), ~~Defendant returned these checks to Plaintiff's attorney having never deposited or transacting any of them.~~

12. The parties intend, as part of this Settlement, to resolve this particular dispute, along with all of the other claims asserted by each of them against the other in this litigation.

13. In consideration for Defendant agreeing to voluntarily dismiss his breach of contract and unjust enrichment claims against Plaintiff and thereby waive his right to recover the monies Defendant claims to have loaned Plaintiff, Plaintiff agrees to:

(a) Immediately issue a replacement check drawn on the account of Plaintiff's law firm or such other account as Plaintiff may utilize for financial transactions, in the amount of Seventy-Five Hundred ($7,500) Dollars made payable to "Ortoli Rosenstadt, as attorneys for Wenzhao Lu" in the amount of $7,500 and sent to Ortoli Rosenstadt's main office located at 366 Madison Avenue, 3rd Floor, New York, New York 10017, attention Marc S. Gottlieb, Esq.;

(b) Cooperate with Defendant's counsel in obtaining from the Ludini Property purchaser's attorney one or more checks totaling $33,332.72 payable to "Ortoli Rosenstadt, as attorneys for Wenzhao Lu," as replacement checks for the two bank checks Defendant previously rejected and sent back to Plaintiff following the sale of the Ludini Property.

(c) Plaintiff's cooperation shall include executing any and all necessary authorizations, stipulations and/or any other documents requested of him by the buyer's attorney and/or by Defendant's counsel, in order to facilitate the re-issuance of these replacement checks which should similarly be sent to Defendant's counsel's main office.

14. Plaintiff represents and warrants that other than the $7,500 check drawn on his account but which was never transacted, Plaintiff did not receive any of the other funds which were intended for and sent to Defendant as Defendant's share of the net proceeds from the sale of the Ludini Property.

15. Provided Plaintiff cooperates fully with Defendant in his efforts to obtain replacement checks from the buyer's attorney as set forth above, Defendant shall not look to Plaintiff for any of this money other than for the $7,500 drawn on Plaintiff's account as set forth hereinabove.

16. The parties acknowledge and agree that any and all agreements, written or verbal entered into between themselves, are deemed rescinded, of no further force or effect, and that any claims arising from these agreements which either party had or may continue to have against the other, are forever waived. This includes any claims arising out of the Real Property Agreement (see Exhibit "B"), the March 2010 Agreement, as well as any agreements between Plaintiff and/or Plaintiff's law firm and Nanshan Memorial Medical Institute and/or Lu Daopei Hospital.

17. Plaintiff, for himself, his law firm, his heirs, administrators, executors, successors and assigns ("Plaintiff Releasors") fully and forever releases and discharges Defendant, including Defendant's heirs, administrators, executors, successors and affiliates, including Nanshan Memorial Medical Institute and Lu Daopei Hospital and their respective affiliated entities, subsidiaries, parents, employees, officers, directors, successors and assigns ("Defendant Releasees") and each of them, from any and all claims, demands, actions, causes of action, contracts, obligations, suits, debts, costs or liabilities, whether known or unknown, which Plaintiff ever had, now has, or may hereafter claim to have, against any of the Defendant

Releasees from the beginning of the world to the date of execution of this Stipulation.

18. Defendant, for himself, his heirs, administrators, executors, successors and assigns ("Defendant Releasors") fully an forever releases and discharges Plaintiff, including Plaintiff's heirs, administrators, executors, successors and affiliates, Plaintiff's law firm and its associates and/or employees, and each of them ("Plaintiff Releasees"), from any and all claims, demands, actions, causes of action, contracts, obligations, suits, debts, costs or liabilities, whether known or unknown, which Defendant Releasors ever had, now has, or may hereafter claim to have against any of the Plaintiff Releasees from the beginning of the world to the date of execution of this Stipulation.

19. It is the Parties' intent that this Stipulation shall apply to all claims, whether known, unknown or unanticipated. Furthermore, the general releases provided above shall remain in effect as a full and complete release, notwithstanding the existence or subsequent discovery of any presently unknown, different or additional facts or claims. The parties expressly waive the right to argue or claim, under any statute, legal doctrine or precedent that this Stipulation of Settlement does not extend to matters that either of them did not know about or suspect existed at the time the Stipulation was executed.

20. The Parties agree that the fact that they are entering into this Stipulation shall not be taken or construed to be an admission of liability on the part of either of them.

21. The Parties agree that each shall bear his own costs and expenses incurred by him in connection with this litigation.

22. Each Party acknowledges and represents that he has carefully read and fully understands all of the provisions of this Stipulation, that he is entering into this Stipulation knowingly and voluntarily, and that the Stipulation is a product of good faith negotiations

between the Parties

23. The Parties respectively represent and certify that each of them has had the benefit of independent legal counsel as it relates to their entering into this Stipulation, and that neither of them has relied upon any representations or statements made by the other party or the other Party's counsel in executing this Agreement, other than as stated expressly herein.

24. This Stipulation constitutes the entire agreement between the Parties and is entered into by the Parties without reliance upon any statement, representation, promise, inducement or agreement not expressly contained herein. It is expressly understood and agreed that this Stipulation may not be altered, amended or otherwise modified in any respect except by a writing duly executed by both Parties.

25. This Stipulation may be executed in one or more counterparts, all of which counterparts shall be deemed to be one instrument upon execution of a counterpart by all signatories to this Stipulation.

26. This Stipulation shall be governed by the laws of the State of New York applicable to agreements made, and to be performed, therein and without resort to that State's conflict of law provisions or rules.

IN WITNESS WHEREOF, the Plaintiff and Defendant hereto knowingly and voluntarily executed this Stipulation as of the date set forth below.

_____  Date: July 14, 2023
JOHN NICHOLAS IANNUZZI

_____  Date: _____
WENZHOU LU

between the Parties.

23. The Parties respectively represent and certify that each of them has had the benefit of independent legal counsel as it relates to their entering into this Stipulation, and that neither of them has relied upon any representations or statements made by the other party or the other Party's counsel in executing this Agreement, other than as stated expressly herein.

24. This Stipulation constitutes the entire agreement between the Parties and is entered into by the Parties without reliance upon any statement, representation, promise, inducement or agreement not expressly contained herein. It is expressly understood and agreed that this Stipulation may not be altered, amended or otherwise modified in any respect except by a writing duly executed by both Parties.

25. This Stipulation may be executed in one or more counterparts, all of which counterparts shall be deemed to be one instrument upon execution of a counterpart by all signatories to this Stipulation.

26. This Stipulation shall be governed by the laws of the State of New York applicable to agreements made, and to be performed, therein and without resort to that State's conflict of law provisions or rules.

IN WITNESS WHEREOF, the Plaintiff and Defendant hereto knowingly and voluntarily executed this Stipulation as of the date set forth below.

_____ Date: July 14, 2023
JOHN NICHOLAS IANNUZZI

_____ Date: July 19, 2023
WENZHAO LU